## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **AMANALI BABWARI,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  2:21-CV-00895-RDP** |
| | } | |
| **STATE FARM FIRE & CASUALTY** | } | |
| **COMPANY, et al.,** | } | |
| | } | |
| **Defendants.** | } | |

## MEMORANDUM OPINION

This matter is before the court on Defendant's Motion for Judgment on the Pleadings and Plaintiff's Cross-Motion for Summary Judgment. (Docs. # 6, 12). The motions are fully briefed (Docs. # 6, 12, 19, 20) and ripe for decision. For the reasons discussed below, Defendant's Motion (Doc. # 6) and Plaintiff's Motion (Doc. # 12) are both due to be denied.

### I.      Background

Plaintiff was an employee of A.Y.R.S. Food & Fuel and was employed at a gas station located in Forestdale, Alabama. (Doc. # 6-1 at 3). Plaintiff worked six days a week from 2:00 p.m. to 11:00 p.m. (*Id.*).

On October 10, 2016, Plaintiff closed the store around 11:00 p.m. and walked to his car. (*Id.* at 5). The gas station owners did not permit Plaintiff to park in front of the store. (Doc. # 1-1 at 7). Consequently, to reach his car at night, Plaintiff had to walk across the gas station's parking lot and the adjacent business's parking lot. (Doc. # 6-1 at 5-6). The lock to the driver-side door of Plaintiff's vehicle was broken. (*Id.* at 6). So, Plaintiff was required to enter his car from the passenger side. (*Id.*). While Plaintiff sat in the passenger seat, an unknown assailant approached his car. (*Id.*). The assailant robbed Plaintiff and shot him at least nine times. (*Id.*). He was rushed

to the hospital, where doctors saved his life. (*Id.*). However, Plaintiff sustained permanent injuries. (*Id.*).

Earlier that evening, around 8:00 p.m., Plaintiff took one-hundred dollars in change from the store to his car. (Doc. 6-2 at 19, 32). Plaintiff would take change to his wife as the store where she worked needed more change on hand (*Id*. at 31) and then return the amount of the change as a higher-denomination bill or indicate that his employer should take the amount out of his next paycheck. (*Id.* at 18-19).[1]

To recover for his injuries sustained during the robbery, Plaintiff brought an action in state court against A.Y.R.S., the owners of the gas station, and the unknown assailant (as a fictitious party). (*See id.*). A.Y.R.S. and the store owners agreed to a consent judgment with Plaintiff, and the Circuit Court for Jefferson County entered the consent judgment as a final judgment awarding damages in the amount of $877,659.66 to Plaintiff. (Doc. # 1-1 at 10).

Thereafter, Plaintiff brought this action in state court against State Farm Fire and Casualty Company to recover the damages awarded against State Farm's insured in the underlying judgment. (*See id.*). State Farm removed the action to this court and now seeks judgment on the pleadings. (Docs. # 1). Plaintiff opposes the motion and also has moved for summary judgment. (Doc. # 6).

## II.    Standard of Review

### A.    Federal Rule of Civil Procedure 12(c)

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is appropriate when no material facts are in

---

[1] It was originally believed that Plaintiff took a bank deposit to his car on the night of the incident; however, Plaintiff's employer later found the bank deposit at the store. (Doc. # 6-3 at 11-12).

dispute and the movant is entitled to judgment as a matter of law." *Washington v. Rivera*, 939 F.3d 1239, 1242 (11th Cir. 2019). In ruling on a motion for judgment on the pleadings, "[the court] accept[s] as true all material facts alleged in the non-moving party's pleading, and [the court] view[s] those facts in the light most favorable to the non-moving party." *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014).

A Rule 12(c) motion for judgment on the pleadings is analyzed the same as a Rule 12(b)(6) motion to dismiss. *Pipes v. City of Falkville*, No. 12-cv-2885, 2013 WL 3367105, at *1 (N.D. Ala. July 5, 2013) (adopting report and recommendation); see also *Losey v. Warden*, 521 Fed. App'x 717, 719 (11th Cir. 2013) ("A motion to dismiss and a motion for judgment on the pleadings should not be granted unless 'the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" (citations omitted)). Accordingly, to survive a motion for judgment on the pleadings, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted); *see also Losey*, 521 Fed. App'x at 719 (applying the plausibility standard articulated in *Iqbal* to Rule 12(c) motion).

A complaint states a plausible claim for relief "when [a] plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although detailed facts are not needed, a plaintiff is obligated to provide as grounds for entitlement to relief more than mere labels and conclusions. *Id.* Formulaic recitations of the elements of a cause of action do not satisfy a plaintiff's burden. *Id.* "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 556 (2007). If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed. *Id.* at 570.[2]

### B.   Federal Rule of Civil Procedure 56

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party has met its burden, Rule 56 requires the non-moving party to go beyond the pleadings and -- by pointing to affidavits, or depositions, answers to interrogatories, and/or admissions on file -- designate specific facts showing that there is a genuine issue for trial. *Id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Allen v. Bd. of Pub. Educ. for Bibb Cty.*, 495 F.3d 1306, 1314 (11th Cir. 2007); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is

---

[2] Defendant attached to its motion the complaint, two depositions, and the consent judgment from the underlying state case as well as a certified copy of the policy. The parties dispute whether the attachment of the depositions converts the motion for judgment on the pleadings to a motion for summary judgment. The court need not (and does not) address this issue because Defendant's motion fails whether it is analyzed (1) with or without the depositions and (2) under a Rule 12(c) or Rule 56 standard.

merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

When faced with a "properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997). As *Anderson* teaches, under Rule 56(c) a plaintiff may not simply rest on his allegations made in the complaint; instead, as the party bearing the burden of proof at trial, he must come forward with at least some evidence to support each element essential to his case at trial. *See Anderson*, 477 U.S. at 252. "[A] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* at 248 (citations omitted).

Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. "Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative." *Sawyer v. Sw. Airlines Co.*, 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (citing *Anderson*, 477 U.S. at 250-51).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Sawyer*, 243 F. Supp. 2d at 1262 (quoting *Anderson*, 477 U.S. at 251-52); *see also LaRoche v. Denny's, Inc.*, 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999) ("The law is

clear ... that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment.").

The Eleventh Circuit has interpreted *Celotex* to require that, as to issues on which the nonmovant would bear the burden of proof at trial, a

> moving party is not required to support its motion with affidavits or other similar material negating the opponent's claim in order to discharge this initial responsibility. Instead, the moving party simply may show [ ]—that is, point[ ] out to the district court—that there is an absence of evidence to support the non-moving party's case. Alternatively, the moving party may support its motion for summary judgment with affirmative evidence demonstrating that the non-moving party will be unable to prove its case at trial.

*Fitzpatrick*, 2 F.3d at 1115 (quoting *U.S. v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)). And, where the moving party has met this initial burden by showing that there is an absence of evidence supporting the nonmoving party's case, the nonmoving party must

> respond in one of two ways. First, he or she may show that the record in fact contains supporting evidence, sufficient to withstand a directed verdict motion, which was "overlooked or ignored" by the moving party, who has thus failed to meet the initial burden of showing an absence of evidence. Second, he or she may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.

*Id.* (internal citations omitted).

If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; *i.e.* facts that would entitle it to a directed verdict if not controverted at trial. *See Fitzpatrick*, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

**III.     Analysis**

Plaintiff claims that State Farm is responsible for paying the underlying judgment under

Alabama law. He points to Alabama Code § 27-23-2, which provides:

> Upon the recovery of a final judgment against any person, firm, or corporation by
> any person … for loss or damage on account of bodily injury, or death or for loss
> or damage to property, if the defendant in such action was insured against the loss
> or damage at the time when the right of action arose, the judgment creditor shall be
> entitled to have the insurance money provided for in the contract of insurance
> between the insurer and the defendant applied to the satisfaction of the judgment,
> and if the judgment is not satisfied within 30 days after the date when it is entered,
> the judgment creditor may proceed against the defendant and the insurer to reach
> and apply the insurance money to the satisfaction of the judgment.

Ala. Code § 27-23-2.

State Farm responds that it is not liable for the judgment against its insured because the

policy was not triggered, and alternatively, several exclusions to coverage apply. (Docs. # 4 at 14-

15; 6 at 2).

For the reasons explained below, the court concludes that Plaintiff has stated a plausible

claim for relief and, at this stage, the court cannot decide as a matter of law that Defendant is liable

for the judgment awarded against its insured.

> **A.     Plaintiff Has Pleaded Facts Sufficient for a Trier of Fact to Find That There
> was an Occurrence; However, When the Current Evidence is Read in the Light
> Most Favorable to Defendant, the Court Cannot Conclude as a Matter of Law
> That There was an Occurrence.**

The policy's Business Liability section provides that Defendant "will pay those sums that

the insured becomes legally obligated to pay as damages because of 'bodily injury' … to which

this insurance applies." (Doc. # 6-5 at 54). In relevant part, the policy explains that the Business

Liability section applies to bodily injuries that are caused by an "occurrence." (*Id.*). The policy

defines occurrence as "an accident, including continuous or repeated exposure to substantially the

same general harmful conditions." (*Id.* at 67). While the policy does not define the term "accident,"

Alabama case law defines the term as "[a]n unintended and unforeseen injurious occurrence; something that does not occur in the usual course of events or that could be reasonably anticipated." *Hartford Cas. Ins. Co. v. Merchants & Farmers Bank*, 928 So. 2d 1006, 1011 (Ala. 2005) (quoting *St. Paul Fire & Marine Insurance. Co. v. Christiansen Marine, Inc.*, 893 So. 2d 1124, 1136 (Ala. 2004)) (in turn citing *Black's Law Dictionary* 15 (7th ed. 1999)).

Plaintiff was shot by an unknown, third party in an adjacent parking lot that is not owned by the insured. (Doc. # 12 at 3). On one hand, Plaintiff alleges that the gas station was robbed previously in December 2015 and February 2016; that Plaintiff had to call the police on a weekly basis; that the owners knew employing an additional individual on the late-night shift would deter criminal activity but did not do so; that there were not sufficient lights outside the store; and that Plaintiff was not allowed to park in the well-lit area outside of the gas station. (Doc. # 1-1 at 6-8). On the other hand, in a letter to the insured, Defendant noted that it "firmly believe[d]" the occurrence requirement for coverage had been met. (Doc. # 13-5 at 4).[3]

After careful review, the court concludes that Plaintiff has stated a plausible claim in the pleadings that there was an occurrence. However, notwithstanding this Rule 12(c) adjudication, Plaintiff's summary judgment motion is due to be denied. When the limited Rule 56 record is read in the light most favorable to Defendant,[4] the court cannot conclude as a matter of law that there actually was an occurrence here.

---

[3] In the letter, Defendant denied coverage because it believed that the Employer's Liability exclusion applied. (Doc. # 13-5 at 4).

[4] Plaintiff would bear the burden of proof at trial as to whether there was an occurrence. Thus, at the summary judgment phase, Plaintiff must come forward with positive evidence demonstrating the absence of a genuine issue of material fact on this issue. *See Fitzpatrick*, 2 F.3d at 1115. The court concludes that Plaintiff has failed to present such evidence.

      **B.**      **Although State Farm Did Not Waive Any of the Exclusions, Plaintiff Pleaded Facts Sufficient for a Trier of Fact to Find That No Exclusion Applied to His Case.**

Plaintiff argues that State Farm waived each exclusion it relies upon with one exception: the Employer's Liability exclusion. Plaintiff contends that any other exclusions were waived because State Farm did not raise them in its letter to the insured. Plaintiff's argument is off the mark.

      **1.**      **Defendant Did Not Waive the Opportunity to Raise Exclusions in the Policy as Defenses to Coverage.**

In advancing his claim under § 27-23-2, Plaintiff "effectively stands in the shoes of the insured … subject to all coverage defenses that would be available to the insurer … had the action been brought by the insured." *Robinson v. Hudson Specialty Ins. Grp.*, 984 F. Supp. 2d 199, 1204 (S.D. Ala. 2013) (citing *Travelers Indemnity Co. of Conn. v. Miller*, 86 So. 3d 338, 342 (Ala. 2011); *Nationwide Mut. Fire. Ins. Co. v. Estate of Files*, 10 So. 3d 533, 534-535 (Ala. 2008)). Plaintiff argues that State Farm waived all exclusions except for the Employer's Liability exclusion because State Farm failed to raise the other exclusions in its disclaimer letter to the insured. (Doc. # 12 at 14). However, Plaintiff's review of the case law on this topic is incomplete.

While the insurer can waive "an express condition in the insurance contract" by not raising the issue in a disclaimer letter, the insurer does not waive the opportunity to later allege that exclusions to the policy apply. *Compare First Alabama Bank of Montgomery, N.A. v. First State Ins. Co.*, 899 F.2d 1045, 1063 (11th Cir. 1990) *with Mutual Service Ins. Co. v. Frit Industries, Inc.*, 358 F.3d 1312, 1323 (11th Cir. 2004); *see Home Indem. Co. v. Reed Equipment Co., Inc.*, 381 So. 2d 45, 50-51 (Ala. 1980) (explaining that "the doctrine is not available to bring within the coverage of a policy risks not covered by its terms or risks expressly excluded therefrom"). Accordingly,

State Farm has not waived its ability to raise other exclusions in the policy, such as the Employment-Related Practices Exclusion.[5]

### 2.     The Employer Liability Exclusion Does Not Preclude Coverage

The Employer's Liability Exclusion provides:

This insurance does not apply to …

     a.  "Bodily injury" to:
          (1) An "employee" or a "former employee" of the insured arising out of and in the course of:
               (a) Employment by the insured; or
               (b) Performing duties related to the conduct of the insured's business; or
         …

     b.  This exclusion applies:
          (1) Whether the insured may be liable as an employer or in any other capacity; and
          (2) To any obligation to share damages with or re-pay someone else who must pay damages because of the injury.
    …

(Doc. # 6-5 at 56). To determine the meaning of "arising out of and in the course of," the court looks to the law of workers' compensation for guidance even though the meaning of the term may vary in the context of different areas of the law.[6] Ala. Code § 25-5-31; *SCI Liquidating Corp. v. Hartford Fire Ins. Co.*, 181 F.3d 1210, 1218 (11th Cir. 1999) (explaining that the definition of the same term may vary between workers' compensation and liability insurance under Georgia law);

---

[5] Further, in the disclaimer letter, State Farm expressly reserved its ability to raise additional defenses not mentioned in the letter and clearly stated that the letter should not be construed as a waiver of other defenses. (*See* Doc. # 13-5 at 5).

[6] The term "arising out of and in the course of" may have a different meaning in relation to workers' compensation statutes as compared to that term's use in exclusions referenced in insurance contracts. The policies applicable to both areas of law dictate that "arising out of and in the course of" is more restrictive in the context of insurance policy exclusions. *Compare Nationwide Mut. Ins. Co. v. Thomas*, 103 So. 3d 795, 805 (Ala. 2012) ("Exceptions to coverage must be interpreted as narrowly as possible in order to provide maximum coverage for the insured, and must be construed most strongly against the company that drew the policy and issued it.") *with Ex parte Weaver*, 871 So. 2d 820, 824 (Ala. 2003) (stating that courts are to liberally construe worker compensation laws in favor of their "beneficent purpose").

*see Gear Auto. v. Acceptance Indem. Ins. Co.*, 709 F.3d 1259, 1264 (8th Cir. 2013) (citing *Truck Insurance Exchange v. Vassholz*, 839 S.W.2d 22 (Mo. App. 1992)); *State Farm Mut. Auto Ins. Co. v. Spahn,* No. 8:12-cv-2619-T-23EAJ, 2013 WL 5532761 (M.D. Fla. Oct. 7, 2013) (citing *State Farm Mut. Auto. Ins. Co. v. Roe*, 573 N.W.2d 628 (1997)); *Ottumwa Hous. Auth. v. State Farm Fire & Cas. Co.*, 495 N.W.2d 723, 727 (Iowa 1993) ("We think this same meaning was intended to apply to the language 'arising out of and in the course of employment' in the employee exclusion clause [as the workers' compensation statute.]"). *But see State Farm Fire & Cas. v. One Stop Cellular, Inc.*, No. 4:05-cv-00067, 2006 WL 2583408, at *4 (W.D. Va. Sept. 6, 2006) (following the state supreme court's reasoning that insurance contracts not be read in reference to the workers' compensation statute).

The general rule under Alabama's Workers' Compensation Act is that an accident that occurs while an employee is traveling to or from work does not arise out of and in the course of employment. *Hughes v. Decatur General Hosp.*, 514 So. 2d 935, 937 (Ala. 1987). However, the scope of the Act does not necessarily end "once a worker punches a clock or locks a door behind him." *Ex parte Strickland*, 553 So. 2d 593, 595 (Ala. 1989) (holding that an employee's injury while climbing the employer's fence to retrieve tools after the workday finished was "naturally related to his employment"). Rather, the Act covers "a reasonable time, space, and opportunity before and after while [the worker] is at or near his place of employment." *Id.* (quoting *Barnett v. Britling Cafeteria Co.*, 225 Ala. 462, 463, 143 So. 813 (1932)). The exceptions to the general rule include (1) when the employer reimburses the employee for travel; (2) when the accident occurs "on public property that is tantamount to the employee's ingress to and egress from the employer's property"; (3) when the injury occurs while the employee is crossing a public street that is a necessary route between the employer's main premise and a parking lot owned by the employer;

and (4) "when an employee, during his travel to and from work, is engaged in some duty for his employer that is in furtherance of the employer's business." *Ex parte Shelby Cty. Health Care Auth.*, 850 So. 2d 332, 336 (Ala. 2002); *see Hughes* 514 So. 2d at 937; *Tucker v. Die-Matic Tool Co., Inc.*, 652 So. 2d 263 (Ala. Civ. App. 1994); *Minor v. Alabama Specialties, Inc.*, 598 So. 2d 938 (Ala. Civ. App. 1992).

The first three exceptions clearly do not apply here. The gas station did not reimburse Plaintiff for his travel. At the time of the accident, Plaintiff was not on public property that was tantamount to his egress from the gas station. And, Plaintiff was not on a public street when the accident occurred (additionally, A.Y.R.S. did not own the parking lot where the accident occurred).[7]

Therefore, if the fourth exception does not apply, then Alabama's Workers' Compensation Act would not cover the accident. The fourth exception, also referred to as the "dual capacity" exception, "applies whenever an employee's travel benefits both the employee and the employer, 'if the trip involves performance of a service for the employer which would have necessitated a trip by someone if the employee had been unable to perform that service in connection with his personal journey.'" *Tucker v. Die-Matic Tool Co., Inc.*, 652 So. 2d 263, 265 (Ala. Civ. App. 1994) (quoting *Winn–Dixie Stores, Inc. v. Smallwood*, 516 So. 2d 716, 718 (Ala. Civ. App. 1987)) (quoting in turn *Eddie Wallace's Garage v. Arreaga*, 406 So. 2d 405, 406 (Ala. Civ. App. 1981)).

At this stage of the case, it appears that the only ones who benefitted from Plaintiff taking the change to his car were his wife (and possibly *her* employer). On October 10, 2016, Plaintiff took one-hundred dollars in change to his car at 8:00 p.m. Plaintiff was not in the process of

---

[7] Also, the facts of this case are easily distinguishable from those in *Strickland*. The employee in *Strickland* was injured while climbing a fence owned by the employer to retrieve tools in case he needed to report to a worksite before the next workday. *Strickland*, 553 So. 2d at 593-95. But here, after he closed the store, Plaintiff was injured by a third party in a parking lot adjacent to (and not owned by) his employer.

transferring a deposit to the bank for his employer nor performing any other task that would benefit his employer. Rather, Plaintiff was taking change so that his wife did not have to make a trip to the bank on behalf of her employer. Plaintiff would then return the amount of money he took in change as a larger denomination bill or, alternatively, have the amount withheld from his paycheck. Regardless, Plaintiff was not saving his employer a trip to the bank or any additional time or resources. That is, even after the transaction, Plaintiff's employer would still have to make a bank deposit (either with less money if taken out of Plaintiff's pay or with less amount of change if Plaintiff returned with a larger denomination bill). Therefore, the court cannot say that the dual capacity exception to the "coming-and-going" rule applies here. Accordingly, even if the court reads "arising out of and in the course of" parallel to Alabama's workers' compensation statute -- rather than broadly in favor of coverage -- the Employer's Liability exclusion does not operate here.

### 3. None of the Other Argued Exclusions Preclude Coverage

Defendant also argues that (1) the Employment-Related Practices exclusion, (2) the Expected or Intended Acts exclusion, and (3) the Willful and Malicious Acts exclusion preclude coverage, and provide a basis for its motion for judgment on the pleadings. The court disagrees.

*First*, the Employment-Related Practices exclusion concerns injuries that arise out of an employer's refusal to employ, a termination decision, or some other employment-related practice, "such as coercion, demotion, evaluation, malicious prosecution, reassignment, discipline, defamation, harassment, humiliation, or discrimination." (Doc. # 6-5 at 56). The actions underlying the current dispute -- an employee being assaulted by a third party in an adjacent parking lot -- are beyond the scope of this exclusion.

*Second*, the first subdivision of the Expected or Intended Injury section excludes Business Liability coverage for injury "expected or intended to cause harm as would be expected by a reasonable person." (Doc. # 6-5 at 55). Under Alabama case law, a subjective-intent test applies to this exclusion, and Alabama courts have indicated that whether the exclusion applies is "generally a question of fact for the jury or judge." *State Farm Fire & Cas. Co. v. Davis*, 612 So. 2d 458, 460-61 (Ala. 1993) ("Under this subjective test, an injury is intended from the standpoint of the insured if the insured possessed the specific intent to cause bodily injury to another, whereas an injury is expected from the standpoint of the insured if the insured subjectively possessed a high degree of certainty that bodily injury to another would result from his or her act.") (internal citations omitted). Here, no one argues that the owners of A.Y.R.S. intended for Plaintiff to be a victim of an armed assault. And, as explained above, Plaintiff has pleaded sufficient facts from which, if proven, a reasonable jury could find that his employer did not expect Plaintiff's injuries to occur.

*Third*, the second subdivision of the Expected or Intended Injury exclusion provides that Business Liability coverage does not apply to an injury "which is the result of willful and malicious, or criminal acts of the insured." (Doc. # 6-5 at 55). The analysis of this exclusion involves applying an objective test. *Davis*, 612 So. 2d at 465. Also, willful conduct is defined as "that in which the actor 'has intentionally done an act of unreasonable character in reckless disregard of the risk known to him, or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow.'" *McCauley v. Estes*, 726 So. 2d 719, 722 (Ala. Civ. App. 1998) (citing *Jeansonne v. Detillier*, 656 So. 2d 689, 692 (La. App. 1995); *Keathley v. State Farm Fire & Cas. Ins. Co.*, 594 So. 2d 963, 965 (La. App. 1992)) (relying in turn *on Prosser and Keeton on Torts* § 34 (5th ed. 1984)). Here, the criminal activity was that

14

of a third-party assailant, not the insured. The failure to hire a second employee or to fix any deficiencies in outdoor lighting by the insured does not rise to the level of willful and malicious conduct. Accordingly, Plaintiff has pleaded sufficient facts to show that coverage could apply.

## IV.   Conclusion

The court's ruling today certainly reflects where the parties are in this litigation. That is, it is early and there is still work that must be done before the court can assess this case on the merits. On the one hand, Plaintiff has failed to establish as a matter of law that an occurrence took place. Therefore, Plaintiff's Motion for Summary Judgment (Doc. # 12) is due to be denied. On the other hand, Defendant has failed to show that Plaintiff has not presented a plausible claim for relief. More specifically, Defendant has not demonstrated as a matter of law that an occurrence did not take place or that any of the coverage exclusions apply to Plaintiff's case. Accordingly, Defendant's Motion for Judgment on the Pleadings (Doc. # 6) is due to be denied.

A separate order in accordance with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this January 21, 2022.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE